UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBIN HALL,

                                        DECISION

                Plaintiff,              and ORDER


vs.                                     13-CV-6155T


THE TOWN OF BRIGHTON; AND FIRE
MARSHAL CHRISTOPHER A. ROTH,
INDIVIDUALLY, et al.,


                Defendants.

_____

<u>INTRODUCTION</u>

     Plaintiff, Robin Hall, ("Hall" or "Plaintiff"), brings this
action under 42 U.S.C. § 1983, against defendants Town of
Brighton ("Brighton" or the "Town") and Fire Marshal Christopher
A. Roth ("Fire Marshal Roth"), individually, alleging that she
was deprived her civil rights in violation of the Equal
Protection Clause of the 14th Amendment of the United States
Constitution.  Plaintiff's claims arise out of action taken by
Brighton and Fire Marshal Roth in which Plaintiff was found to be
in violation of an "unpermitted home use" with regards to her
occupation as a cab driver. Plaintiff claims that she was
discriminated against on the basis of her gender in that the Town
zoning laws were selectively enforced against her but not against
similarly situated men in town. Complaint ¶ 22.

Plaintiff commenced this action on March 25, 2013 asserting claims under 42 U.S.C. § 1983 claiming violation of her First, Fourth and Fourteenth Amendment rights by Fire Marshal Roth's "selective enforcement of Town codes, laws, and rules, not similarly applied to men." Complaint ¶ 42. She also alleges a violation of her First and Fourteenth Amendment rights as a result of Brighton's alleged failure to properly train and supervise its employees and supervisors as well as its policies which allegedly condone, acquiesce and ratify "discrimination" and a "hostile deliberately indifferent" treatment based on gender. Complaint ¶¶ 49, 50, 52.

Defendants move to dismiss Plaintiff's Complaint claiming that the Complaint is time barred by the statute of limitations and fails to state a claim for selective treatment and for municipal liability pursuant to Monell v. Dept. of Social Services, 436 U.S. 658 (1978). For the reasons set forth below, I find that Plaintiff's complaint is timely, but that she has failed to state a cause of action for selective enforcement of zoning laws in violation of her Constitutional rights.

<u>BACKGROUND</u>

Plaintiff Robin Hall, a female, is the owner and operator of a taxi vehicle which she uses to drive for the Checker Cab Company. Complaint ¶¶ 16, 17, 18. On or about November, 2009,

2

Hall purchased her home on 1815 Clover Street in the Town of Brighton, New York. Complaint ¶ 19.  Soon after she purchased her home, she often witnessed one or more persons photographing her home on several different occasions. Complaint ¶ 23. On March 8, 2010, approximately four months after she purchased the home, Plaintiff received a notice from Brighton and Fire Marshal Roth accusing her of operating a "taxi cab business" out of her home, and indicating that an inspection would take place on March 19, 2010 to see if she was in complaince with Town codes. Complaint ¶¶ 24, 25.  Thereafter, on March 24, 2010, Plaintiff received a notice that an inspection was completed on March 22, 2010, and that Plaintiff was found to be in violation of an "un-permitted home use." Complaint ¶ 26. Plaintiff was directed to appear in Brighton Town Court on April 19, 2010 to answer the charge of violating section 203-2.1D of the Brighton Town Code. Complaint ¶ 27.

Hall alleges that she spoke with Fire Marshal Roth informing him that she did not operate a business out of her home, that she worked for Checker Cab located at 1000 West Avenue in Rochester, and that dispatchers radioed calls out to drivers from that location. Complaint ¶ 29.  Fire Marshal Roth contacted the owner of Checker Cab who confirmed that business operations were conducted out of the Rochester location. Complaint ¶ 32.

Plaintiff appeared at the Brighton court hearing at which time she accepted a six month Adjournment in Contemplation of Dismissal ("ACD") with the condition that "Ms. Hall, her husband and father (all three of whom drive a cab for a living) adhere to certain restrictions that no other male property owner who had a business vehicle on their property had to comply with." Complaint ¶ 34. The restrictions limited Plaintiff to using her driveway no more than two to three times per day and banned Plaintiff from smoking on her front porch. Complaint ¶ 35, 38. Ultimately, Plaintiff alleges that she was forced to sell her house because of the actions taken by Brighton. Complaint ¶ 40.

Plaintiff alleges that she is the "sole female homeowner in the Town of Brighton who owns a clearly marked vehicle located in her driveway in plain sight." Complaint ¶ 21. She identifies three individuals that she alleges are male homeowners in Brighton which have clearly marked business vehicles parked in their driveways in plain sight. The Complaint alleges these individuals are similarly situated but were not subject to the same treatment by Brighton or Fire Marshal Roth. Complaint ¶ 39.

The complaint alleges that Plaintiff was deprived of her civil rights pursuant to 42 U.S.C. § 1983 and asserts two causes of action: 1) the deprivation of Plaintiff's First, Fourth and Fourteenth Amendment Rights to Equal Protection by Fire Marshal

4

Roth's  disparate  treatment  of  Plaintiff  by  his  selective
enforcement  of  the  law  amounting  to  a  municipal  policy;  and
2)  Monell  liability  against  the  Town  of  Brighton  because  Fire
Marshal  Roth  had  final  policy  making  authority  to  selectively
enforce  the  law;  that  selective  enforcement  was  actually  part  of
municipal  policy;  that  Brighton  had  a  policy  to  fail  to  train  and
supervise  its  employees;  that  under  the  policy,  Brighton
"condones,  acquiesces,  and  ratifies  discrimination"  based  on
gender;  and  that  Brighton  had  a  policy  that  "condones,  acquiesces
and  ratifes  a  hostile,  deliberately  indifferent  response  against
Town  residents  based  on  sex."  Complaint  ¶  49.  Plaintiff  seeks
compensatory  and  punitive  damages  in  an  unspecified  amount.

## DISCUSSION

In  reviewing  a  motion  to  dismiss  on  the  pleadings,  "the
factual  allegations  in  the  complaint  must  be  accepted  as  true,
and  all  reasonable  inferences  must  be  drawn  in  favor  of  the
plaintiff."  Frazier v. Coughlin,  850  F.2d  129  (2d  Cir.  1988).
The  court  should  grant  such  a  motion  only  if,  after  viewing
plaintiff's  allegations  in  this  favorable  light,  "it  appears
beyond  doubt  that  the  plaintiff  can  prove  no  set  of  facts  in
support  of  his  claim  which  would  entitle  him  to  relief."  Ricciuti
v. New York City Transit Authority,  941  F.2d  119  (2d  Cir.  1991).

A.    Statute of Limitations

Plaintiff does not dispute that the three year statute of limitations which governs general personal injury actions in New York state also applies to this § 1983 claim. Owens v. Okure, 488 U.S. 235, 251 (1989), Meyer v. Frank, 550 F.2d 726, 728 (2d Cir. 1977), Cloverleaf Realty of New York, Inc. v. Town of Wawayanda, 572 F.3d 93, 94 (2d Cir. 2009).   The parties also agree that the statute of limitations begins to run as of the date the plaintiff receives notice of the allegedly discriminatory action. Vertical Broadcasting, Inc. V. Town of Southampton, 84 F.Supp.2d 379, 396 (E.D.N.Y. 2000), citing, Tubner v. West, 162 F.3d 1148 (2d Cir. 1998).   They disagree as to the date when the statute of limitations started to accrue.

There are two alleged discriminatory actions by Fire Marshal Roth.   The first is a notice on March 8, 2010  "falsely accusing her of operating a 'taxi cab business' out of her home." Complaint ¶ 24. The second, is a notice received on March 24, 2010, charging that Plaintiff is in violation of an "un-permitted home use." Complaint ¶ 26. Plaintiff argues that the statute of limitations began to run on March 24, 2010, which would make her

March 25, 2013 filing of the complaint timely because March 24, 2013 fell on a Sunday[1].

Defendants assert that it is the earlier date of March 8, 2010 that is controlling: the date Plaintiff was first officially notified that she was being investigated. Defendants argue that this notice started the process of the alleged selective enforcement of Brighton Town Codes against Hall and thus should be the date used to compute the timeliness of the claim. Plaintiff counters that the statute of limitations accrues on the date that she was notified that the town code was actually being enforced against her.

It is well settled under federal law that "a cause of action accrues once a plaintiff has a "complete and present cause of action." Merck & Co., Inc. v. Reynolds, 559 U.S. 633, 644 (2010)(quoting Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997). Only after a plaintiff has "a complete and present cause of action" may the statute of limitations on that cause of action begin to accrue. Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co., 18

---

[1]In computing time, "if the last day is a Saturday, Sunday or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday or legal holiday." Rule 6(a) of the Federal Rules of Civil Procedure.

N.Y.3d 765, 770, (2012) ("As a general principle, the statute of limitations begins to run when a cause of action accrues, that is, when all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief in court."). Accordingly, in this case, the statute of limitations could not have run until Hall had a complete cause of action upon which she could seek relief.

To state a cause of action for the violation of a constitutional right under Section 1983, a plaintiff must allege inter alia, that he or she was deprived "of a right, privilege or immunity secured by the Constitution or laws of the United States." Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir. 1993) (citations omitted). Restated, to allege a valid cause of action under Section 1983, a plaintiff must allege that he or she has suffered a constitutional injury. See, e.g. Grandal v. City of New York, 966 F.Supp. 197, 203 (S.D.N.Y., 1997)(dismissing action where the plaintiff "failed to allege a constitutional injury which could provide a basis for relief under 42 U.S.C. § 1983.").

In the instant case, Hall alleges that the Town selectively enforced its zoning codes against her. It is axiomatic that a

cause of action for selective enforcement of a code cannot accrue until some enforcement action has actually taken place.   The first notice that plaintiff received of the enforcement of a code provision against her came on March 24, 2010, when the Town informed her that she was in violation of the town code, that enforcement action was being taken against her, and that she was required to appear before the Town to answer the charge against her.   Prior to that, plaintiff was only notified that an investigation that was being commenced to determine if she had violated any zoning code provision.   Because no enforcement action had taken place prior to the Town issuing a notice of violation on March 24, 2010, no cause of action for selective enforcement could have accrued prior to that date.   Accordingly, the notice issued on March 8, 2010 that an investigation would be taking place did not create a constitutional injury upon which plaintiff could sue for relief, and did not set in motion the commencement date of the statute of limitations for a cause of action based on selective enforcement.   Rather, the limitations period began on March 24, 2010, the date on which actual enforcement of the Town code against the plaintiff commenced. Because plaintiff's Complaint was filed within three years of that date, her action is timely.

9

B.   The Complaint Fails to State a Selective Enforcement Claim

Although the Court finds that plaintiff's claim is timely, I nevertheless find that because plaintiff has failed to state a cause of action for selective enforcement, her Complaint must be dismissed.   To plead an equal protection violation based on a claim of selective enforcement, a plaintiff must plausibly assert that: (1) compared with others similarly situated, he or she was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, gender, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. Brown v. Syracuse, 673 F.3d 141, 151-52 (2d Cir. 2012); Diesel v. Town of Lewisboro, 232 F.3d 92,103 (2d Cir. 2000).

Here, Plaintiff fails to plead sufficient facts to state a claim under the Equal Protection Clause. First, the pleadings do not plausibly state that Hall was similarly situated to other individuals who received different treatment.   Second, Plaintiff's allegations do not state a plausible claim of discriminatory intent.

1.   Plaintiff Fails to Adequately Plead Selective Treatment
     <u>from those Similarly Situated</u>

Second Circuit courts are split on how to define "similarly situated." See <u>Viteritti v. Inc. Vill. of Bayville</u>, 2013 WL 145811, *8 (E.D.N.Y. 2013). Under a stricter definition of the term adopted by some courts, the aggrieved party must show that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the [treatment selectors] acted on the basis of a mistake." <u>Id</u>., quoting, <u>Ruston v. Town Bd. for the Town of Skaneateles</u>, 610 F.3d 55, 58 (2d Cir. 2010). Under a looser standard, the aggrieved party need only show that the comparator was or is "similarly situated in all material respects." <u>Viteritti</u>, 2013 WL 145811 at *8, quoting, <u>Vassallo v. Lando</u>, 591 F.Supp.2d 172, 184 (E.D.N.Y. 2008).

Under either standard, Plaintiff does not satisfy the pleading requirements to survive a motion to dismiss. The Complaint identifies three individuals who are purportedly "similarly situated" to Plaintiff. There is no allegation with

regard to whether or not these individuals ever received notifications from Defendants with regard to operating a business out of the home.  On this ground alone, the selective enforcement claim is subject to dismissal. See, e.g., Christian v. Town of Riga, 649 F.Supp.2d 84, 94 (W.D.N.Y. 2009)(dismissing selective enforcement claim because plaintiff failed to plead facts showing disparate treatment to similarly situated individuals).

Plaintiff argues that the essential commonality that makes these individuals similarly situated is that they are all "home/property owners."  Even if this element was sufficient to satisfy the pleading requirements, public records show that these individual homeowners are women, defying the claim that Plaintiff was treated differently based on gender.

2. The Complaint Fails to Adequately Plead Discriminatory Intent

Even if Plaintiff could satisfy the first prong of a claim for selective enforcement, the claim would still fail on the second prong.  A bare allegation of discriminatory animus is not enough to render an equal protection claim plausible. See, e.g., Liang v. City of New York, 2013 WL 5366394 *11 (E.D.N.Y. 2013)("Without a whiff of facts other than the gender difference

between [the parties], all that is offered are naked assertions of discrimination" which "cannot survive a 12(b)(6) motion"); <u>33 Seminary LLC v. City of Binghamton</u>, 869 F.Supp.2d 282 (N.D.N.Y. 2012).

Here, Plaintiff fails to plead any facts to support her speculative assertions that she was targeted as a female for selective enforcement of town laws. She argues that an Equal Protection claim can be established not only by discriminatory animus but also by a showing of motivation to punish or inhibit Plaintiff's exercise of Constitutional rights, or with a malicious and bad faith intent to cause injury. However, even under this analysis, Plaintiff's Complaint fails because she offers no such facts in her pleading which would indicate Defendants were motivated to punish, or that they acted in bad faith nor with intent to cause injury. See, e.g., <u>Kajoshaj v. New York City Dept. of Educ.</u>, 2013 WL 5614113 (2d Cir. 2013); <u>Kamholtz v. Yates County</u>, 350 Fed. Appx. 589, 590 (2d Cir. 2009)(selective enforcement claim lacking sufficient factual support in the complaint was properly dismissed on a Rule 12(b)(6) motion).

C. <u>The Complaint Fails to State a Monell Liability Claim</u>

Defendants also argue that Plaintiff fails to plead a basis for municipal liability. This Court agrees. A plaintiff suing a city under Section 1983 must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." <u>Roe v. City of Waterbury</u>, 542 F.3d 31, 36 (2d Cir. 2008), citing, <u>Monnell v. Dep's of Social Servs.</u>, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); see also, <u>Pearl v. City of Long Beach</u>, 296 F.3d 76, 87 (2d Cir. 2002)(under <u>Monell</u>, "a municipality could be held liable for constitutional torts committed pursuant to a municipal custom or policy"). "[M]unicipal liability under § 1983 attaches where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." <u>Roe</u>, 542 F.3d at 36. Under <u>Monell</u>, an actionable municipal policy or custom exists in the following circumstances: (1) the existence of  a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final

decision making authority, which caused the alleged violation of plaintiffs civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees. Bliven v. Hunt, 478 F.Supp.2d 332, 336-37 (E.D.N.Y. 2007), citing, Moray v. City of Yonkers, 924 F.Supp. 8, 12 (S.D.N.Y. 1996). To show municipal policy by referring to only a single act, that act must have been committed by a city official "responsible for establishing final policy with respect to the subject matter in question," and must represent a deliberate and considered choice among competing alternatives. Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

If a plaintiff is challenging an unoffical custom or practice of the town, he or she must show that the practice was "so widespread as to have the force of law." Id. quoting Bd. of Cnty. Comm'rs, 520 U.S. at 404. The custom "need not [have] received[d] formal approval by the appropriate decision-maker . .

. [but] plaintiff must prove . . . that [it] is permanent." <u>Davis</u>
<u>v. City of New York</u>, 228 F.Supp.2d 327, 337 (S.D.N.Y.
2002)(internal citations omitted).

Here, the Plaintiff cannot establish a claim for <u>Monell</u>
liability.  The Complaint alleges a panoply of claims under
<u>Monell</u>: (1) Fire Marshall Roth had the final policymaking
authority to selectively enforce Town Codes (Complaint ¶48);
(2) Brighton had a policy to fail to supervise and/or train its
employees and supervisors and under this policy, Brighton
condones, acquiesces, and ratifies gender based discrimination
(Complaint ¶ 49); (3) under the policy, Brighton condones,
acquiesces and ratifies a hostile, deliberately indifferent
response against residents based on sex (Complaint ¶ 49);
(4) under its policies, Brighton treats unequally different
persons similarly situated on the basis of sex (Complaint ¶ 50);
(5) by and through the deliberate indifference of Fire Marshal
Roth, Brighton directly created and maintained a custom, policy
or practice of condoning, facilitating or promoting the use of
unconstitutional discrimination on the basis of sex in the
selective enforcement of Town codes, rules and laws (Complaint
¶ 51);(6) Brighton failed to properly supervise and/or train it

supervisors in civil rights, employment laws and the proper use of the Town's discrimination policies, so as to avoid deprivation of civil rights (Complaint ¶ 52). However, the Complaint is entirely devoid of facts to support these assertions.

Plaintiff makes no claim nor presents any facts showing that Brighton enacted any official policy pursuant to which her rights were violated. Her allegations regarding unofficial practice or custom is limited to the actions of Fire Marshal Roth with regard to Plaintiff's single experience. Here, Fire Marshall Roth was not the final policy maker. Rather, under Brighton town code, the Town Board sets policy, not the Fire Marshal. Brighton, N.Y., Town Code ch. 73 § 73-7(C)(3)(2007). The fact that Fire Marshal Roth has discretion to exercise enforcement of Brighton town laws, such discretion itself does not give rise to municipal liability. Pembaur at 481-83. Plaintiff fails to suggest any facts showing that an official with final decisionmaking authority had any awareness of the supposed "policies or customs" let alone enacted, formulated, or ratified those policies. Nor does Plaintiff allege facts showing "widespread" or "permanent" unconstitutional practices.

Furthermore, Plaintiff fails to plead facts indicating that Brighton's alleged failure to properly train or supervise its employees was so egregious as to amount to "deliberate indifference" to the rights of individuals such as plaintiff. Although she contends that Fire Marshal Roth's activity was so manifest that acquiescence could be thought of as a policy or custom, that charge is but another factually unsupported conclusion. Mere assertions without allegations of fact to at least infer a custom or policy is insufficient to withstand a motion to dismiss. <u>Dwares v. City of N.Y.</u>, 985 F.2d 94, 100 (2d Cir. 1993). Circumstantial evidence includes "evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction, or evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that its agents were violating citizens' constitutional rights." <u>Thomas v. Venditto</u>, 925 F.Supp.2d 352 (E.D.N.Y. 2013), quoting, <u>DeCarlo v. Fry</u>, 141 F.3d 56, 61-62 (2d Cir. 1998)(internal quotation marks and citation omitted).

Because the Complaint is devoid of any allegations from which the existence of a municipal policy can be inferred, the claims against the Brighton are dismissed.

CONCLUSION

For the reasons set forth above, the Defendants' motion for judgment on the pleadings is granted (Dkt. #8) and the complaint is dismissed with prejudice (Dkt. #1).

IT IS SO ORDERED.

S/Michael A. Telesca

_____

Honorable Michael A. Telesca

United States District Judge

DATED:    January 30, 2014

          Rochester, New York